Good morning, your honor. It's Adam Axelrod here for defendant appellant Johnny Thomas. Two main issues in this appeal, both having to do with Mr. Thomas' sentencing. The first issue that I would address is the sentencing of Mr. Thomas as a career offender. Let me ask you a question about that. Sure. If I understood the pre-sentence report right, it's two separate robberies. They're a month apart. Separate robberies, separate people. The only reason that they were sentenced at the same time was for the convenience of the prosecutor and perhaps the court in wrapping up everything having to do with this guy in one appearance. They didn't even consolidate the cases under one file number, as I recall, though I don't know that that would matter. And it looks to me as though our standard of review is abuse of discretion. There's one of these multi-factor tests that lets a judge do whatever he wants. He articulated things in terms of all the factors. I don't understand how we can say he's out of line and abused his discretion in view of there being two separate robberies. Okay. Well, let me talk about that a little bit. First of all, the two separate robberies, I mean, there's various ways of looking at things of whether they're related or not related. One would be considering them as a common scheme and plan. Is there anything to show that they are? I would not push that here. I mean, they are a month apart. They are both robberies. But that's not a point that I'm pushing. If I work on two cases a month apart and they're both cases, it doesn't mean they're related. I don't know. I have never been a robber. I would think it would be the same thing, though. Right. But there's cases that talk about, there's cases all over the place on what a common scheme or plan is. And, I mean, you know, the closer in time that you have two incidents, the more. Is there any reason to think that these robberies are part of a common scheme? Oh. I mean, I'm looking at the pre-sentence report. There's some reason to think it just in the sense that they're a month apart. They're both robberies. They both seem like the same sort of street-type robbery. But, again, that's not an issue that I'm pushing. Good. Counsel, why don't you get to the issue of the sentencings being together? Okay. Under 4A1.2, isn't there a comment saying that if offenses are sentenced together, that they're related? Well, I think that they can be related. There's a multi-factor test that I thought we set out in Asbury. Right. And I think what you have is a real question here as to whether these cases were consolidated for purposes of sentencing. And if they were, then they're related. That's for sure. So the question that we have is were they consolidated for sentencing? And I think when you look at this case, that, you know, the fact that they're two separate cases helps. Because you've got these two robberies on two different occasions. They're being prosecuted separately. And then on the date of sentencing, they're put together for sentencing. They're given nearly identical sentences. They're before the same judge. And they're set to run concurrently. And when you look at the cases of Chapnick, U.S. v. Chapnick, U.S. v. Baciero, U.S. v. Asbury, I think that's what you come away with a feeling that this case really shows consolidation for purposes of sentencing. Let's take the Asbury factors. I think you've agreed this didn't occur on a single occasion. It wasn't part of a single common planner scheme. So it's really whether it was consolidated. Asbury factors are whether there was sentencing on the same day. That occurred here. Right. In the same court, that occurred for the same or similar offenses. Well, they were both robberies. So they're identical offenses. Pursuant to a single plea agreement. Now, that wasn't the case here, right? Well, I think that's something that we don't really know. We don't have any written plea agreement. But there are, you know, most of the time, as I understand it, in state court, there aren't written plea agreements. Someone just goes in and enters a plea. Okay. The next one is under the same docket number. Were these same or different? They had different case numbers. Okay. After a formal consolidation order. There was no consolidation order here. There was no formal consolidation order. Although there's cases that talk about that not being necessary. Right. And then under circumstances, it resulted in concurrent sentences. And they got concurrent sentences. Weren't they different, though? They were slightly different. I think one had an extra year, but they were to run concurrently. And they both ended up with three-year terms. So basically, as I see it, four out of the seven ASPERI factors do apply in this case. One of them, not for sure, but possibly. So it's almost a 50-50 situation. So basically, you're asking us to determine, based on 4A1.2, that this was consolidated for trial or sentencing. And for that reason, he's not a career offender. Is that correct? That's correct. And let me just say that the reason I think that Judge King, when he looked at it, he focused quite a bit of attention on the fact that there wasn't a formal consolidation order. And I just don't think, you know, in state court criminal practice, that's a realistic thing that takes place all that often. You know, we have these cases separate. Are we all just talking based on our general experience about state practices? I know that's not part of the record. I don't mind talking from experience if that's what we're doing, but I wanted to know if it is part of that. That's what I was doing just then. I have experience in Alaska. I don't know about this state, California, how they do it. In Alaska, everybody wants to save themselves the trouble of walking in and out of the courtroom door for nothing but formal separation, so they get everything done with one guy at once, whether they mean to consolidate in some sense or not. It's just prosecutor saving work. Yeah. Well. And it looked to me like that's what happened here. I mean, that's not my feeling about this case. I mean, I look at them. I look at the fact that they're similar offenses. I look at the fact that they took place. Let me back you back to something that precedes that. Okay. Asbury doesn't stand all by itself. It's an interpretation of the Guidelines Manual. In the Guidelines Manual, 4A1.2 tells you how to do this. The official application note to 4A1.2 says that this whole multifactor testing is for nonviolent offenses, where it's crimes of violence, they're treated as separate offenses. 4A1.1F will apply. These are both robberies. Just out of curiosity, how come that doesn't take us out of the multifactor test and just put us under 4A1.1F? To be perfectly honest, I'm not familiar with that. It was my understanding that if they were consolidated for sentencing, then they would be treated as related offenses, even if they were both violent offenses. 4A1.1F says add one point for each prior sentence resulting from a conviction for a crime of violence that didn't receive points under A, B, or C above, et cetera. And it's referred to in this application note to 4A1.2. You can't help me on that? I'm sorry because I'm not familiar with that particular. Okay, now let's get to 4A, to the application note that ASBRE construes. The application note says they're related if the offense occurred on the same occasion, well, it didn't here, it's a month apart, part of a single common scheme, and you really don't have anything to show that they were, but you say, well, two robberies a month apart might have been, or were consolidated for sentencing. Well, it was done at the same time, but they weren't consolidated into one numbered case. So formally and technically they're not consolidated. And then it says this refers to nonviolent offenses. And then I look at ASBRE, and it holds that the district court did not err in concluding that the offenses were not consolidated, and it notes that we review the district court's determination that the offenses were not related or consolidated with due deference. That's why I'm having trouble getting to first base here with your argument. It looks like you've got nothing. It looks like the application note's against you, ASBRE's against you, and the deferential standard of review is against you. What am I missing? I think it's more open-ended than that. I guess we would just disagree on that. I guess the only thing open-ended I've been able to pick up from the argument, and tell me if there's more, is you think a guy does two robberies a month apart, it must be part of a common scheme. No. And I don't understand why. No, that's not the argument. The argument really is basically that these cases were consolidated for purposes of sentencing. I think the only thing that's really missing in this case is some formal consolidation order. But other than that, all the other indications are that they were consolidated for sentencing. So there was not a consolidation order. There was not a formal consolidation order. That's right. Wasn't it just serendipitous, counsel? Pardon me? Wasn't it just serendipitous that he was sentenced on the same day? I don't believe it was serendipitous. I don't think that would happen through serendipity. I mean, I think it was a concerted effort to put these cases together. I'm interpreting something, but I don't think you can call it serendipitous when, in the Los Angeles court system, these two cases are being litigated separately for months and months and months, and then they come together. And they're both the same offense, and they both get concurrent terms. These are things that the cases which discuss consolidation for purposes of sentencing refer to. It doesn't make practical sense to me. I mean, it's saying to a guy, hey, you mug one person, you mug a couple totally different people a month apart. We don't care. It's all the same to us. We'll treat you just as no worse a criminal for the two muggings than the one. Why? Well, I think you're asking me a question that doesn't really have to do with what the present state of the law is. I'm not deciding whether it's right. I think that is what the law is about. It says, ultimately, the judge is supposed to determine the seriousness, and there's that sentence in the application note that says, if you follow the multifactor test and it leads to consolidation, but the judge thinks that that underrepresents the seriousness of the defendant's criminal history and the danger he presents to the public, don't give him the break. That's what the application note says. But that's not what Judge King decided. He didn't decide that it unrepresented the seriousness of it. He decided that these cases were not consolidated for sentencing. And what I'm arguing is that when you look at all the facts, it sure looks like they were. Counsel, if I could interject a question here. Asbury, on its holding, just sets out the general standard. It's not really supportive of a conclusion here that there was a consolidation. It just is mentioning that as a factor. But I thought that the Chapnick case was right on point for your side of the case. So you haven't really mentioned Chapnick. I don't know if you want to address it. My understanding was that in that case, the Ninth Circuit held that two peripheries were consolidated for sentencing, even where there wasn't a formal consolidation order. Yes, Your Honor. Thank you. It seems to me that answers, in part, my colleague Judge Kleinfeld's concern that there was no order here or that these were burglaries and they're too serious. So what I want to know is, do Chapnick and the prior case, Baciero of the Ninth Circuit, do those cases mean that there is an abuse of discretion in the court finding this not separate or finding these separate in light of the lack of a formal order? I think they do in this case, in part, because when we look back at Judge King's reasoning, he specifically focused on the lack of a consolidation order to sidelining some of the other factors and not really paying as much attention to the whole history of these two cases. So for that reason, I think there was an abuse of discretion. I think these two cases were, as you say, based on Chapnick, consolidated for purposes of sentencing, and Mr. Thomas shouldn't have been deemed a career offender. Unless there's some other questions, I have a few other points I'd like to raise. I don't know how much time. We're way over. Okay. Then I'll thank you. Thank you, counsel. We'll give you 30 seconds for rebuttal anyway. Thank you. May it please the Court, my name is Carol Peterson and I represent the United States in this case. First of all, I'd like to start off with your question, Judge Gould, that was just posed regarding Chapnick and Baciero. I believe that those two cases are distinguishable, and there's no question that this is, in fact, a close case. We thought about it a lot. I was the attorney of record in the underlying proceedings, and there were a lot of delays in the sentencing proceedings, as the docket reflects, while we gathered documents and thought about how this shaped up. But I think the fundamental difference with Chapnick and Baciero is the Court's emphasis that in Baciero, the lower court, the state court, imposed three identical concurrent sentences. And then again, in Chapnick, the Court imposed two identical concurrent sentences for the two burglaries. And in the present case, there is no question that we have two different sentences that were imposed concurrently. For the first robbery, the defendant received a three-year term of imprisonment in state prison. For the second robbery, which involved both a second-degree robbery charge and an attempted robbery, the defendant received a two-year term of imprisonment plus a one-year enhancement for carrying a firearm during that robbery, as well as a two-year term for the attempted robbery. All of these terms, all three terms, were set to run concurrently. So they did ultimately result in him serving or being ordered to serve a three-year term of imprisonment. But they all were different. And I do believe that that makes this case unique from Baciero and from Chapnick. Also, I think there's no question the sentencing did occur on the same day. It occurred in the same court for the same or similar offense. But I just want to caution. There's nothing in the record to show that this was, in fact, pursuant to a single plea agreement. It may or may not have been. The record is just simply devoid of any information on that point. It – I think it's just as likely, given the docket sheets in these two cases that were presented in the excerpt of record, one of these cases was assigned to Judge Chernosky the entire way through. Another case was assigned, it seemed, to several different judges along the way. I think an equally possible conclusion for us to make from this is that, in fact, maybe no judge had actually taken over this case and it was just simply assigned to Judge Chernosky for a convenience purpose. Counsel, help me with the question that I asked your adversary. It looks to me as though the guidelines treat violent priors and nonviolent priors differently. In Chapnick, it said burglary. Now, by itself, that doesn't tell you everything you need to know, but often burglaries are nonviolent, burglary of a store that's closed for the night or something. Many burglaries are nonviolent. Some are violent. The other one, Baciero, it was a per curiam. It looks like maybe a memo dispo turned into an opinion, and I can't tell a lot of what the facts are, but it looks like one of the priors was for forgery, which is nonviolent. Here you've got robberies. That's a quintessentially violent crime. It's one of its elements. Do we just get out of that Asbury guideline scheme where it's violent? How come that's ignored here? I don't think so. My understanding of 4A1.1F is that it essentially is sort of a backstop should the court consider them calculated. You would then, I guess, add one extra point to a criminal history had that been actually done. So, for example, instead of the full three points you might get in an ordinary situation if each was counted separately. Maybe in this case you get an extra point for having those two having been deemed consolidated. But I don't think it gets us around Chapnick, and one of the reasons I don't is because there are other cases. For example, Gallegos-Gonzalez, which is at 3F3rd, 325. And I think there the court was looking at assault with a deadly weapon and the sale of PCP. Certainly assault with a deadly weapon I think would be categorized as a crime of violence regardless. What was the site on that again? That is 3F3rd, 325. So it just doesn't matter for this purpose? I don't think that it does. I think it's an excellent point, and I actually was looking at this last night. But I think fundamentally, ultimately, it doesn't get us around the Chapnick and Asbury factors. So you're saying that the actual case law suggests that even though the guideline notes suggest that these, if it's a violent crime, you don't even look at the Asbury criteria. It's just treated differently. You're saying that, in fact, the cases really show that that admonitory note is being ignored. I'm saying that I don't know as much about this as perhaps I should know, and I would not make the statement to the court that you just made simply because I lack adequate, complete adequate understanding of that 4A1.1F portion. But it does appear to me that there are at least some cases in which they're going ahead and considering the Asbury factors. But if the court ---- And Gallego did consider Asbury factors and it was a violent crime. Right. Did anyone bring this violent, nonviolent distinction to the court's attention? I don't recall that being an issue. Let me ask you about something that's disturbing me. Usually the guidelines make a whole lot of practical sense. Some people think they're too harsh. Some people think judges ought to have more discretion. But you can always see the sense. Here, if what we focus on is the existence of consolidation, I don't see the sense. Things are sentenced in one hearing instead of two, partly for the convenience of deputy clerks and not having to do the typing to start another docket sheet, and partly for the convenience of assistant DAs and not having the inconvenience of having to get up from their chair twice and take the elevator to the courtroom. Neither matters at all in terms of the public interest. And that's the kind of thing we're focusing on. I don't understand why. Well, I would actually quite concur with the Court's assessment. But I would also point the Court to the reasoning of ---- that this Court used in Asbury where it said in balancing the factors, and it's referring to the factors that's just enumerated about whether or not a case is consolidated. It says, In balancing these factors, our ultimate goal remains finding a sentence that accurately reflects both the seriousness of the underlying Federal offense and the extent and nature of the defendant's past. I think it outlines that the goal is to not be overly harsh with a defendant who may have, as I believe, I think the goal is perfectly obvious. It's a control. Some prosecutors will charge the major crime, and some will do like we used to do in law school, figure out how to charge eight separate felonies out of one instant of indiscretion. And this offers some control on the latter type of prosecutor. No, that's right, Your Honor. And I think also the Court in Chapnick also mentioned that the reason, one of the reasons besides the identical concurrent sentences that it felt the case was consolidated, the Court also stated that the defendant's burglary spree in that case was a result of an ongoing drug problem that he was experiencing at that time. And so as you say, it simply gives the Court's flexibility to make these kinds of determinations. But in this case, as the powerful factors that these were two separate robberies separated by a month involving two different victims, I think it's important that they involve a firearm. And I think that when you take out the pursuant to a plea agreement aspect, which there's simply no information on in this record, you've got three on one side, three on the other, and it comes down to the Court's exercise of discretion under Buford. And in Buford, this Court said that district courts are in the best position to evaluate these types of situations. The nature of the legal decision is fact-based, and the district courts are uniquely in the best position to decide. So given all of the factors in this case and the record that is before this Court, it certainly shows that Judge King carefully considered this and made a careful decision that he outlined on the record. The government would argue that this was the appropriate sentence, that these were not consolidated, and that the sentence in this case should be upheld. Incidentally, as far as the robberies go, I know something about the second robbery, because there's a description in paragraph 48 of the pre-sentence report with the gunshots and taking the wallet from the people in the car. The first robbery that was a little more than a month before, I can't tell anything from paragraphs 40 through 44. Is there any other source I should look at? May I have just a moment, Your Honor? Just if you remember it. I thought you'd remember your record. I don't remember off the top of my head, but I can tell you that attached to the defendant's initial sentencing position paper is the actual charging document in that case. I see. It reflects the name of the victim and that information. So if you look at that, I think you'll get at least a little bit more information about the nature of that particular offense. Thanks. That's what I needed to know. Thank you, Your Honors. Thank you, counsel. I'd just like to say that I think what it comes down to in this case is whether you believe that the sentencing for Mr. Thomas in the state court cases was just a matter, as you said, of serendipity. And I think when you look at the record, it's hard to come to that conclusion. So Judge King focused on the absence of a formal consolidation order. That clearly isn't necessary based on Chavnik. The other factors are all present there for why these cases separately litigated up until the date of sentencing come before the same judge at the same time and given identical concurrent terms or nearly identical concurrent terms. But they're really, they are quite different, as your opposing counsel indicated. What is? When you break down the parts of the sentences, they were quite different. They're not identical. They both ended up with three years to run concurrently. But that was the net effect, but the subparts were different. Well, slightly. But I think the more important thing is that they're both three years. They're both set to run concurrently. I mean, I think that's the significant thing. And the fact that these cases, while being separate the whole time, come together for sentencing. Thank you. Thank you, counsel. United States v. Thomas is submitted. Stevenson v. Ryan is submitted. Torres v. Alameda is submitted. We'll hear United States v. Betz. Thank you.
judges: Kleinfeld, Gould, Smtih